2000 UT 10

**STATE of Utah, Plaintiff and Petitioner,**

v.

**Jeffrey Russell FINLAYSON, Defendant and Respondent.**

No. 980279.

Supreme Court of Utah.

Jan. 14, 2000.

Jan Graham, Atty Gen., Thomas Brunker, Catherine M. Johnson, Asst. Atty's Gen., James M. Cope, Salt Lake City, for plaintiff.

Robert K. Heineman, Salt Lake City, for defendant.

STEWART, Justice:

¶ 1 Jeffrey Russell Finlayson was convicted of forcible sodomy, a first degree felony,

in violation of Utah Code Ann. § 76–5–403(2) (1995); rape, a first degree felony, in violation of Utah Code Ann. § 76–5–402 (1995); and aggravated kidnaping, a first degree felony, in violation of Utah Code Ann. § 76–5–302 (1995). Defendant appealed all three convictions, and we transferred this case to the Utah Court of Appeals. The Court of Appeals affirmed the convictions for forcible sodomy and rape, and reversed the conviction for aggravated kidnaping. *State v. Finlayson*, 956 P.2d 283 (Utah Ct.App.1998). We then granted the State's petition for a writ of certiorari to review the Court of Appeals' reversal of the kidnaping charge. We affirm, but on a different ground than the one relied on by the Court of Appeals.

## I. FACTS

¶ 2 Defendant met the victim, a Japanese exchange student who spoke little English, on the campus of the Salt Lake Community College, where they both attended classes. Defendant, who is fluent in Japanese, asked the victim if she would help him with his Japanese studies. She agreed, and the two made plans to go to the library together on October 5, 1994.

¶ 3 On that date, defendant picked the victim up at her apartment, and they went to dinner. After dinner, defendant claimed he forgot to bring a book from his apartment, and they drove there to pick it up. When they arrived, defendant asked the victim to come inside to see his Japanese souvenirs, which he acquired while in Japan. Once inside, defendant told the victim that the library was about to close and suggested they study at his apartment. She agreed, and they worked on defendant's Japanese writing skills for approximately one hour.

¶ 4 After they finished studying, defendant asked her if he could kiss her. She said "No," and defendant then pulled her from the chair in which she was sitting, carried her into his bedroom with his arms wrapped around her body, and sexually assaulted her. During the assault, the victim pounded on the floor with one foot in an unsuccessful attempt to attract a neighbor's attention. Defendant told the victim that if she did not stop, she would not be able to go home. She

also made several unsuccessful attempts to escape; after one such attempt, defendant handcuffed her. He removed the handcuffs after she promised to be quiet.

¶ 5 After the assault, the victim tried to leave defendant's apartment, but was made to wait ten minutes while defendant dressed. While leaving the apartment, defendant tried to put a paper bag over the victim's head so she would not see his address. When she refused to wear the bag, defendant placed a jacket over her head. The drive to the victim's apartment lasted one hour, despite the fact that she lived less than thirty minutes away. When the victim stated that she wanted to die, defendant refused to take her home until she promised not to harm herself. Despite defendant's efforts, the victim obtained his address through a letter taken secretly from his apartment.

¶ 6 On certiorari, we review a decision of the Court of Appeals for correctness. *See State v. Hodson*, 907 P.2d 1155, 1157 (Utah 1995). "In doing so, this Court adopts the same standard of review used by the court of appeals: questions of law are reviewed for correctness, and the trial court's factual findings are reversed only if clearly erroneous." *State v. Harmon*, 910 P.2d 1196, 1199 (Utah 1996) (citations omitted).

## II. APPEALABILITY

¶ 7 Defendant argued for the first time in the Court of Appeals that the crime of aggravated kidnaping, on the facts of this case, is a lesser included offense of the crimes of rape and forcible sodomy and, therefore, the conviction for aggravated kidnaping merged into the other convictions. That point was not raised in the trial court, but the Court of Appeals addressed the issue, relying on *State v. Brooks*, 908 P.2d 856 (Utah 1995), and Rule 22(e) of the Utah Rules of Criminal Procedure, for the proposition that an appellate court may consider the legality of a sentence on appeal even though the issue was not raised in the trial court.

¶ 8 As the State correctly argues, the Court of Appeals' decision to review the merger claim under Rule 22(e) was in error.

The issue in the present case is the legality of defendant's conviction, not his sentence. As *Brooks* states, an appellate court may not "review the legality of a sentence [under rule 22(e)] when the substance of the appeal is, as it is here, a challenge, not to the sentence itself, but to the underlying conviction." *Id.* at 860; *see also State v. Babbel*, 813 P.2d 86 (Utah 1991) (*"Babbel II "*).

¶ 9 Defendant concedes that the Court of Appeals' reliance on Rule 22(e) was in error, but argues that we should affirm the reversal of the aggravated kidnaping conviction on the ground of ineffective assistance of counsel.[1]

¶ 10 The Sixth Amendment to the United States Constitution guarantees the assistance of counsel to defendants in all criminal prosecutions. This right has been interpreted as "the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The test for determining when a defendant has been denied this right is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* establishes a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. The application of this test to the instant case is discussed below.

## III. AGGRAVATED KIDNAPING

¶ 11 The Court of Appeals ruled that aggravated kidnaping was a lesser included offense of rape and forcible sodomy. We disagree. The law barring convictions for both an offense and a lesser included offense was explored in *State v. Baker*, 671 P.2d 152 (Utah 1983), and numerous subsequent opinions of this Court and is stated in Utah Code Ann. § 76–1–402.

¶ 12 Aggravated kidnaping may be committed in a variety of ways:

> A person commits aggravated kidnaping if the person intentionally or knowingly, without authority of law and against the will of the victim, by any means and in any manner, seizes, *confines, detains, or transports the victim with intent:*
>
> (a) to hold for ransom or reward, or as a shield or hostage, or to compel a third person to engage in particular conduct or to forbear from engaging in particular conduct; or
>
> (b) *to facilitate the commission*, attempted commission, or flight after commission or attempted commission *of a felony;* or
>
> (c) to inflict bodily injury on or to terrorize the victim or another; or
>
> (d) to interfere with the performance of any governmental or political function; or
>
> (e) *to commit a sexual offense* as described in Part 4 of this chapter.[2]

Utah Code Ann. § 76–5–302(1) (1995) (emphasis added).

¶ 13 The jury was instructed on all variations of aggravated kidnaping. The only argument asserted by the prosecutor at trial in support of the aggravated kidnaping charge was defendant's handcuffing of the victim. The Court of Appeals held that handcuffing the victim was insufficient to support the aggravated kidnaping conviction because that evidence was inseparable from and integral to the evidence which established the elements of the forcible sex crimes.

---

1. Defendant also argues, in the alternative, that we should affirm the Court of Appeals on the ground of plain error. Our decision today makes it unnecessary to address that argument.

2. Part 4 includes both the rape and forcible sodomy charges relevant here.

¶ 14 The elements of rape proved at trial were that defendant (1) had sexual intercourse with the victim (2) without her consent. *See* Utah Code Ann. § 76–5–402(1) (1995). The elements of forcible sodomy proved at trial were that defendant (1) committed sodomy upon the victim (2) without her consent. *See id.* § 76–5–403(2) (1995). The relevant elements of aggravated kidnaping proved at trial were that defendant (1) intentionally (2) detained the victim (3) with the intent (4) to facilitate the commission of the rape and forcible sodomy and that he committed forcible rape and sodomy. *See id.* § 76–5–302(1) (1995). The Court of Appeals ruled that the detention of the victim was a necessary aspect of the sex crimes and had no independent legal significance apart from those crimes. The court therefore reversed the conviction as a lesser included offense under Utah Code Ann. § 76–1–402 (1995).

¶ 15 The doctrine of lesser included offense, under section 76–1–402, has a superficial applicability to the facts of this case, but as we held in *State v. Couch*, 635 P.2d 89, 92 (Utah 1981), it does not govern here. Section 76–1–402 precludes convictions on both an offense charged and a lesser included offense. Under this section, an offense is an included offense when "[i]t is established by proof of the same or less than all the facts *required* to establish the commission of the offense charged." Utah Code Ann. § 76–1–402(3)(a) (emphasis added). As discussed above, rape and forcible sodomy do not require proof of detention, although detention is inherently an aspect of both crimes. *See id.* § 76–5–402(1) (rape); *id.* § 76–5–403(2) (forcible sodomy).

¶ 16 The Court of Appeals recognized that detention is an inherent aspect of both crimes, but nonetheless found section 76–1–402 applicable because of its emphasis on the facts of the case, not on the elements of the crime. This conclusion was in error. As we explained in *Brooks*, 908 P.2d 856, the inquiry of whether one crime is a lesser included offense of a greater crime under section 76–1–402, turns on the statutorily defined elements of the two crimes. *See* 908 P.2d at 861. That is, the court looks to the facts to determine what crime, or variation of

the crime, was proved, but once this determination is made, the court looks to the statutory elements of the crime to determine whether it is an included offense. *See id.* Accordingly, aggravated kidnaping is not a lesser included offense of rape or forcible sodomy within the meaning of section 76–1–402, because one of the statutory elements of aggravated kidnaping, i.e., confining, detaining, or transporting a victim, is not a statutory element of either of the sex offenses.

¶ 17 Section 76–1–402, however, is not the only basis for finding that one set of facts may give rise to a merger of two or more separate crimes so as to preclude a multitude of convictions for essentially the same conduct. *Couch*, 635 P.2d 89, for example, dealt with the issue of when a kidnaping may merge into a sexual assault crime. In *Couch*, the defendant was convicted of kidnaping, aggravated sexual assault, and forcible sodomy. There, the defendant met the victim and two of her friends at a fast-food stand in Evanston, Wyoming. The four then arranged to meet for a "drinking party" at a nearby motel. After the party, the victim and her two friends agreed to be driven home by the defendant in the victim's car. The defendant then drove the three girls some fifty miles away to where they lived in Wanship, Utah. *See* 635 P.2d at 91.

¶ 18 After dropping off her two friends, the defendant then drove past the victim's house and, despite her request, refused to stop. The defendant continued to drive back towards Evanston, Wyoming. After driving off the road to a deserted spot, the defendant forcibly removed the victim's clothes and raped her. The defendant then drove the victim in her car to a motel in Evanston, Wyoming, where he got out. *See id.* at 92.

¶ 19 The defendant argued that his act of detaining the victim was merely incidental to the sexual assault and was therefore a lesser included offense. Although the court ruled that section 76–1–402 was inapplicable, it nonetheless recognized the potential merger issue, i.e., that the defendant could not be convicted of both kidnaping and sexual assault if the kidnaping was merely incidental to the sex crimes. The Court stated that the distinction between kidnaping

and sexual assault crimes must be clearly delineated to avoid cumulative penalties. *See id.* at 93. By definition, every rape and forcible sodomy is committed against the will of the victim and therefore involves a necessary detention, which is, of course, required by the kidnaping statutes. Thus, absent a clear distinction, virtually every rape and robbery would automatically be a kidnaping as well. To prevent double punishment for essentially the same act, *Couch* established a test for determining when a defendant's kidnaping conviction is sustainable in addition to his sexual assault convictions. To sustain convictions for both kidnaping and sexual assault, the prosecutor must show that the kidnaping detention was longer than the necessary detention involved in the commission of the sexual assault. Thus, the facts establishing the kidnaping detention must not be merely incidental to the sexual assault, but separate and independent therefrom. The Court held that the defendant's actions in *Couch,* in forcibly removing the victim a substantial distance to an isolated area, was a detention of independent significance and not a detention incidental to the sexual assault and affirmed the kidnaping conviction. *See id.* This analysis is consistent with the rule in a majority of jurisdictions. *See* Frank J. Wozniak, Annotation, *Seizure or Detention for Purpose of Committing Rape, Robbery, or Other Offense as Constituting Separate Crime of Kidnapping,* 39 A.L.R.5th 283, 356 (1996).

¶ 20 This same analysis was held applicable to aggravated kidnaping and rape in *State v. Jolivet,* 712 P.2d 843 (Utah 1986). The State argues that language in *Jolivet* requiring a "substantial period" of detention beyond that inherent in the sex crimes, *see id.* at 844, is inconsistent with the aggravated kidnaping statute. It is true that the statute does not require that the victim be detained or restrained for any minimum period of time before the crime of aggravated kidnaping occurs. *See* Utah Code Ann. § 76–5–302 (1995). A close reading of *Jolivet,* however, shows that the State's criticism is misplaced. In *Jolivet,* the defendant forced the victim at gunpoint to enter his car in a store parking lot. He then drove the victim to a separate location where he sexually assaulted her, still

at gunpoint. After the assault, the defendant forced the victim to remain with him while returning to the store. Upon returning, the victim was released only after promising the defendant to go later to Canada with him. *See id.* at 844. Citing *Couch, Jolivet* held that the evidence established that "a sufficiently substantial period of time elapsed, both before and after the assault and rape, in which the victim was restrained against her will and subjected to a substantial risk of harm from the defendant's threats and loaded gun." *Id.* The Court concluded that "[t]he evidence sufficiently supports the charge of aggravated kidnaping as an act separate from the other charges." *Id.*

¶ 21 *Jolivet* did not hold, as the State's argument assumes, that all convictions for aggravated kidnaping require a "substantial period" of detention. Rather, this language simply emphasized that the defendant's actions in detaining the victim were not inherent in the sexual assault, but "an act separate from the other charges." *Id.*

¶ 22 In the instant case, there was no detention prior to or during the sexual assault that exceeded the detention inherent in the sex crimes. Here, the victim agreed to meet defendant, and then agreed to accompany him to his apartment. It is true that defendant deceived her as to his intentions in this regard, but her decision was not made against her will and was not a "detention" within the meaning of the aggravated kidnaping statute.

■ ¶ 23 The Court of Appeals held that the detention necessary for the aggravated kidnaping charge and the sex crimes occurred simultaneously. The Court of Appeals relied on a three-part test from *State v. Buggs,* 219 Kan. 203, 547 P.2d 720 (1976), in analyzing the kidnaping charge. We agree that the *Buggs* test is a useful tool in applying the rule from *Couch.* Under *Buggs:*

[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnaping the resulting movement or confinement:

  (a) Must not be slight, inconsequential and merely incidental to the other crime;

(b) Must not be of the kind inherent in the nature of the other crime; and

(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

*Id.* at 731. Using this test, Finlayson's detention of the victim up to the time of the rape and sodomy was incidental to the assault, rather than having an independent significance. *See Couch,* 635 P.2d at 93. His carrying the victim into the bedroom, handcuffing her, and physically preventing her escape while the sex crimes were in progress constituted a detention that was "slight, inconsequential and merely incidental to the other crime[s]." Defendant's acts to that point, apart from the rape and forcible sodomy, had no independent significance sufficient to support a separate conviction for aggravated kidnaping. As we stated in *Couch,* to hold otherwise would transform virtually every rape and robbery into a kidnaping as well. *See Couch,* 635 P.2d at 93; *see also Jolivet,* 712 P.2d at 844.

¶ 24 That the facts in this case do not support a conviction for aggravated kidnaping is clear from *Couch* and *Jolivet.* Yet defendant's counsel made no objection to this charge, and failed to raise this at any time, either during trial, or following the conviction in a motion to vacate. As this is an issue that would have been raised outside the presence of the jury, no possible prejudice would have inured to defendant. When no possible explanation or tactical reason exists for such a decision, we have held that the first part of the *Strickland* test, *supra* ¶ 11, is satisfied. *See State v. Templin,* 805 P.2d 182, 188 (Utah 1990); *see also State v. Maestas,* 984 P.2d 376, 381 (Utah 1999).

¶ 25 In the instant case, it is clear that the second part of the *Strickland* test has also been met. Objecting to the aggravated kidnaping charge in the trial court or moving to vacate the conviction would have precluded that court from properly allowing it. With this conviction, defendant has been prejudiced by the imposition of a ten-year-to-life sentence, which although concurrent, would likely increase the time the Board of Pardons and Parole would require him to serve.

¶ 26 Accordingly, we hold that defendant's counsel's failure to object to the aggravated kidnaping charge rendered his performance constitutionally deficient and prejudiced defendant.

¶ 27 Justice Russon's dissent argues that defendant's ineffective assistance of counsel argument is not properly before this Court and that we should remand to the Court of Appeals for a proper analysis of that question. He asserts that *Reese v. Reese,* 984 P.2d 987, 991 (Utah 1999), is authority for the proposition that our review of defendant's ineffective assistance of counsel argument would violate fundamental principles of certiorari review.

¶ 28 The principles stated in *Reese* have nothing whatsoever to do with the policy underlying this Court's allowance of ineffective assistance of counsel claims. Use of the ineffective assistance of counsel doctrine is often allowed to obviate the need for subsequent review by a writ of habeas corpus in a district court and a right of appeal from that ruling—which usually must be done without the assistance of counsel, because most defendants cannot afford private counsel and the State will not pay for representation by Legal Defenders.

¶ 29 *Reese* was a divorce proceeding in which the trial court's rulings regarding alimony, child support, and property were at issue. The wife appealed to the Court of Appeals, where she challenged numerous aspects of the trial court's decree, including imputation of income, apportionment of expenses, awards of alimony, fees, and child support, and projection of expenses. Although the wife raised numerous points of error, the Court of Appeals chose to address only three of them, dismissing the remaining points out of hand without explanation. On certiorari, the wife reasserted each of the points that the Court of Appeals ignored. Because the Court of Appeals refused to even explain its refusal to address these issues, its opinion did not deal with all the relevant facts, much less the obvious interdependence of the various claims. We held that we could not properly review the Court

of Appeals' decision and had no choice but to remand. *Id.* at 991.

¶ 30 *Reese* is clearly inapplicable to the present case. Here, defendant appealed, arguing that the facts did not support a conviction for aggravated kidnaping. Defendant argued ineffective assistance of counsel, illegal sentence (Rule 22(e)), and plain error. We poured this case to the Court of Appeals, where after a complete review of the facts, that court reversed the aggravated kidnaping conviction under Rule 22(e). The Court of Appeals stated that because its decision was based on Rule 22(e), there was no need to consider defendant's ineffective assistance of counsel argument.

¶ 31 The Court of Appeals' reliance on Rule 22(e) was incorrect. However, we have a complete factual record before us, and defendant's arguments raise purely legal questions. It is well settled that we may affirm a judgment of a lower court if it is sustainable on any legal ground or theory apparent on the record. *See Orton v. Carter,* 970 P.2d 1254, 1260 (Utah 1998); *Limb v. Federated Milk Producers Ass'n,* 23 Utah 2d 222, 461 P.2d 290, 293 (1969) (citing 5 C.J.S. *Appeal & Error* § 1464(1)). Ineffective assistance of counsel arguments in particular have often been addressed for the first time by this Court, and when the record is complete and the cases meet the standards outlined in our case law, the merits have been addressed. *See State v. Maestas,* 984 P.2d 376, 378 (Utah 1999); *State v. Chacon,* 962 P.2d 48, 50 (Utah 1998). We have never remanded such claims to the Court of Appeals to address an ineffective assistance of counsel issue. Remanding this purely legal question to the Court of Appeals would waste time, money, and judicial resources. Such a procedure would likely result in the case coming back again to this Court. That procedure would advance no sound policy of judicial review, whether by certiorari or otherwise.

*Defendant's Actions Following the Commission of the Sex Crimes*

¶ 32 The State now argues, for the first time on appeal, that defendant's actions after the commission of the sex crimes are sufficient to support a conviction for aggravated kidnaping.[3] Specifically, the victim was detained for ten minutes before being driven home, forced to wear a jacket over her head, and driven home by a circuitous route lasting at least thirty minutes longer than necessary. The State now argues that these actions were done with the intent to "facilitate flight" from the commission of the sex crimes. *See* Utah Code Ann. § 76–5–302(b) (1995).

¶ 33 We agree that these actions were of an independent significance separate from the commission of the sex crimes. As this detention was against the will of the victim for a substantial period of time, the detention appears sufficient to support a conviction for simple kidnaping.[4] However, to satisfy the aggravated kidnaping statute, the State must prove that this detention occurred with the intent

(a) to hold for ransom or reward, or as a shield or hostage, or to compel a third person to engage in particular conduct or to forbear from engaging in particular conduct; or

(b) to facilitate the commission, attempted commission, or *flight after commission* or attempted commission of a felony; or

(c) to inflict bodily injury on or to terrorize the victim or another; or

(d) to interfere with the performance of any governmental or political function; or

---

3. The argument that defendant's actions following the sexual assault were done with the intent to facilitate flight was not presented to the jury. The only argument the prosecution presented to support the aggravated kidnaping charge was the handcuffing of the victim. As discussed above, however, immobilization of the victim was necessary to perform the rape and forcible sodomy. Although handcuffing as such was not necessary, by itself it had no legal significance in terms of kidnaping.

4. Section 76–5–301 states in pertinent part:
(1) A person commits a kidnaping when he intentionally or knowingly and without authority of law and against the will of the victim:
(a) Detains or restrains another for any substantial period. . . .

(e) to commit a sexual offense as described in Part 4 of this chapter.[5]

Utah Code Ann. § 76–5–302(1) (1995) (emphasis added). As the ten-minute delay and circuitous driving route occurred after the commission of the sex crimes, the only possibility for satisfying the statute is if the detention occurred to "facilitate flight" under section (b).

¶ 34 This Court has never defined the term "flight," either within the meaning of the aggravated kidnaping statute or in other contexts. Its use in the criminal law, however, is quite common. The issue of flight often arises, as in the present case, as an aggravated circumstance; to establish circumstantial evidence of an accused's guilt, *see State v. James,* 819 P.2d 781 (Utah 1991); and as a separate federal crime of flight from prosecution. *See United States v. Hall,* 152 F.3d 381, 422 (5th Cir.1998).

¶ 35 *Black's Law Dictionary* defines flight as: "The evading of the course of justice by voluntarily withdrawing one's self in order to avoid arrest or detention.... Also comprehends continued concealment." *Black's Law Dictionary* 640 (6th ed.1990). Courts have used varying standards for proving flight or determining when such evidence is admissible. *See State v. Bales,* 675 P.2d 573 (Utah 1983). It is quite clear, however, that at the very minimum, flight includes (1) a leaving and (2) a subsequent hiding out, evasion, or concealment. *See* 22A C.J.S. *Criminal Law* § 743 (1989). In the present case, it is obvious that defendant's actions do not meet this minimum requirement. After dropping off the victim, defendant returned to his apartment where he was eventually arrested. There is no evidence that he made any attempt to withdraw, conceal himself, or avoid arrest. While defendant's taking a circuitous route to the victim's home was apparently aimed at covering up his crime and may have been simple kidnaping, it was not flight within the plain and ordinary meaning of the word.

¶ 36 Affirmed.

¶ 37 Associate Chief Justice DURHAM and Justice ZIMMERMAN concur in Justice STEWART's opinion.

RUSSON, Justice, concurring and dissenting:

¶ 38 I concur with the majority's conclusion that the court of appeals improperly applied Utah Rule of Criminal Procedure 22(e) to treat the merits of defendant's merger argument. Because the court of appeals relied upon this improper basis for assessing the validity of defendant's conviction for aggravated kidnaping, it failed to address the only proper basis for treating the merits of defendant's merger argument: ineffective assistance of counsel. *See State v. Finlayson,* 956 P.2d 283, 293 (Utah Ct.App.1998).

¶ 39 Nevertheless, I dissent from the majority's decision to treat the ineffectiveness argument on certiorari. That analysis should be performed in the first instance by the court of appeals, before this court addresses it. Otherwise, we review an ineffectiveness argument that was never treated by the court to which we have issued the writ—a practice that violates the fundamental principles of certiorari review. *See Reese v. Reese,* 984 P.2d 987, 991 (Utah 1999). Having concluded that the court of appeals erroneously failed to address defendant's ineffective assistance argument as to the merger issue, our inquiry ends, and we must remand to the court of appeals for proper analysis of that question.

¶ 40 Chief Justice HOWE concurs in Justice RUSSON's concurring and dissenting opinion.

5. Part 4 includes both the rape and the forcible    sodomy charges relevant here.