2014 UT App 185

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
ROGER ELLIS,
Defendant and Appellant.

Opinion
No. 20120444-CA
Filed August 7, 2014

Third District Court, Salt Lake Department
The Honorable Randall N. Skanchy
No. 101906502

Ronald Fujino, Attorney for Appellant

Sean D. Reyes and Ryan D. Tenney, Attorneys
for Appellee

SENIOR JUDGE PAMELA T. GREENWOOD authored this Opinion, in which JUDGES STEPHEN L. ROTH and JOHN A. PEARCE concurred.[1]

GREENWOOD, Senior Judge:

¶1 Roger Ellis appeals from his convictions of aggravated kidnapping, intentional abuse of a vulnerable adult, and damaging or interrupting a communication device. We affirm.

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

BACKGROUND

¶2     The acts leading to Ellis's convictions occurred on August 8, 2010, in the house he shared with his then-eighty-six-year-old mother (Mother).[2] Throughout most of that day, Ellis followed Mother around the house saying "nasty things" to her, telling her she was "no good," obstructing her movement, and waiting for her outside the door of the bathroom. At one point, he called Mother a "lying bitch" and punched her on the side of her head. Around four that afternoon, Ellis grabbed a butcher knife from the kitchen and began slashing the air with it, apparently attempting to eradicate the "monsters" that he accused Mother of bringing into the house. Mother later explained in her trial testimony that Ellis sustained permanent and degenerative brain damage from a head injury that occurred more than thirty years before the August 8, 2010 incident. In addition, Mother explained that Ellis "had struggled with [drugs] for a long time" and that when he was under the influence of "dope," he would "see[] monsters or spirits in the house" and become "very agitated."

¶3     Also on August 8, 2010, under the pretense of shooing the monsters out of the house, Mother twice attempted to exit the house through the front door. Both times, Ellis pulled her back inside and hit her; after her first attempt, he hit her on the shoulder, and after the second attempt, he hit her in the head. Around 9:19 p.m., after the second blow, Ellis instructed Mother to go to bed at which time Mother pushed the alarm on a medical alert device she wore around her neck. Ellis answered the telephone call from the dispatcher signaled by the medical alert device and told the dispatcher that Mother inadvertently pressed the alarm button.

¶4     Ellis then followed Mother into her bedroom, laid next to her on the bed with the butcher knife in his hands, and threatened to kill her. About an hour later, Ellis left the bedroom to have a cigarette in another part of the house, at which time Mother used

---

2. We recite the facts in a light most favorable to the jury's verdict. *State v. Kruger*, 2000 UT 60, ¶ 2, 6 P.3d 1116.

the cell phone in her pocket to call 911. Paramedics arrived under the impression that Mother was experiencing chest pains. Once she was loaded into the ambulance, Mother explained what had actually transpired.

¶5    During a two-day jury trial, the State presented testimony from Mother, the responding paramedics, and several police officers involved in the investigation. Because the State alleged that the charges of aggravated kidnapping and interference with a communication device were both domestic violence offenses, it was also required to prove that Ellis was Mother's cohabitant. Ellis's defense rested on discrediting Mother, pointing out inconsistencies and ambiguities in her testimony, implying that she suffered from dementia, and suggesting that she may have injured herself in a fall a few days prior to the August 8 incident. At the close of the State's case, defense counsel moved to dismiss the aggravated kidnapping charge on grounds of insufficient evidence, but the trial court denied the motion. The jury convicted Ellis on all counts. Ellis appeals.

ISSUES AND STANDARDS OF REVIEW

¶6    Ellis first argues that the trial court erred by not dismissing the aggravated kidnapping charge. "A trial court's grant or denial of a motion to dismiss is a question of law . . . [the court] review[s] for correctness, giving no deference to the decision of the trial court." *State v. Arave*, 2011 UT 84, ¶ 25, 268 P.3d 163 (alterations and omission in original) (citation and internal quotation marks omitted).

¶7    Ellis next contends that he received ineffective assistance from his trial counsel based on counsel's failure to object to the jury instructions explaining the reasonable doubt standard and to the jury instruction defining the term "cohabitant." "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

ANALYSIS

I. Aggravated Kidnapping

¶8    Ellis contends that it was error for the trial court not to dismiss the aggravated kidnapping charge because he claims the evidence was insufficient to show that a detention independent from the facts supporting the abuse of a vulnerable adult conviction had occurred. "A defendant's motion to dismiss for insufficient evidence at the conclusion of the State's case in chief requires the trial court to determine whether the defendant must proceed with the introduction of evidence in his defense." *State v. Hamilton*, 2003 UT 22, ¶ 40, 70 P.3d 111 (citation and internal quotation marks omitted). "If the State fails to produce believable evidence of all the elements of the crime charged, the trial court must dismiss the charges." *Id.* (citation and internal quotation marks omitted).

¶9    Thus, in reviewing the trial court's denial of Ellis's motion to dismiss, "we apply the same standard used when reviewing a jury verdict" and will uphold the denial of the motion "if upon reviewing the evidence and all inferences that can be reasonably drawn from it, [we] conclude[] that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *See id.* ¶ 41 (citation and internal quotation marks omitted). The State's theory of aggravated kidnapping in this case required it to demonstrate that Ellis, "in the course of committing unlawful detention or kidnapping: (a) possesse[d], use[d], or threaten[ed] to use a dangerous weapon . . . or (b) act[ed] with intent . . . to inflict bodily injury on or to terrorize the victim or another." *See* Utah Code Ann. § 76-5-302(1)(a), (1)(b)(iv) (LexisNexis Supp. 2013).[3] In accordance with the corresponding statutes, the jury was instructed that

_____

3. Because the relevant provisions of the Utah Code in effect at the time of the incident underlying this appeal do not differ substantively from the current version of the Utah Code, we cite the current version for the reader's convenience.

"unlawful detention" occurs when a person "intentionally or knowingly, without authority of law, and against the will of the victim, detains or restrains the victim," *see id.* § 76-5-304(1) (LexisNexis 2012), and that "kidnapping" occurs when a person "intentionally or knowingly, without authority of law, and against the will of the victim[,] . . . detains or restrains the victim for any substantial period of time; [or] . . . detains or restrains the victim in circumstances exposing the victim to risk of bodily injury," *see id.* § 76-5-301(1)(a)–(b).

¶10 Ellis specifically argues that the State did not meet its burden on the detention element of the kidnapping charge because the evidence indisputably shows that "the events occurred entirely in [Mother's] home," where she was able to move around freely, and that she was left alone at least once while Ellis smoked a cigarette. This assertion, however, focuses on the weight of the evidence, not the sufficiency. Here, the trial court correctly ruled that the State had presented "some evidence . . . from which a reasonable jury could find that the elements of" aggravated kidnapping "had been proven beyond a reasonable doubt." *See Hamilton*, 2003 UT 22, ¶ 41 (citation and internal quotation marks omitted). We agree with the State's summation that a reasonable jury could base an aggravated kidnapping conviction on Mother's testimony that Ellis had "followed her around the house throughout the day—even following her to the bathroom," prevented her from using the telephone, "twice physically prevented her from leaving the home, foiled her attempt to get help by calling the medical alert company, and laid down next to her on a bed with a knife."

¶11 Ellis also argues that the trial court erred in denying his motion to dismiss the kidnapping charge because the charge merged with the abuse of a vulnerable adult charge. "Merger is a judicially-crafted doctrine available to protect criminal defendants from being twice punished for committing a single act that may violate more than one criminal statute." *See State v. Diaz*, 2002 UT App 288, ¶ 17, 55 P.3d 1131 (citing *State v. Finlayson*, 2000 UT 10, ¶ 19, 994 P.2d 1243); *see also id.* ("Merger is most commonly applied to situations involving a defendant who has been charged with

committing both a violent crime, in which a detention is inherent, and the crime of kidnaping based solely on the detention necessary to the commission of the companion crime.").

¶12    A "trial court cannot assess whether, under the particular facts of the case, one charge merges into another until the prosecution has presented its case and the jury has convicted the defendant of multiple charges." *State v. Lopez*, 2004 UT App 410, ¶¶ 8–9, 103 P.3d 153 ("[T]he defense can object that charges merge at any time, either during trial, or following the conviction on a motion to vacate, but the trial court should rule on the objection only if the jury returns convictions." (citations and internal quotation marks omitted)); *see also State v. Hawatmeh*, 2001 UT 51, ¶ 17 n.3, 26 P.3d 223 (indicating that the doctrine of merger applies to convictions, not charges); *Commonwealth v. Lowry*, 394 A.2d 1015, 1018 (Pa. Super. Ct. 1978) (explaining that "a defendant may be convicted of two merged crimes" but "can be sentenced [only] once"). As a result, to the extent he sought dismissal of his kidnapping charge on the basis of merger, Ellis's motion was premature, and he failed to raise the issue again after the jury submitted its verdict or otherwise request that the trial court reconsider the matter. Thus, Ellis has not properly preserved the issue of whether the trial court should have merged the kidnapping charge into the abuse charge and we do not address the argument further.[4] *See generally Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 ("Generally, in order to preserve an issue for appeal the issue must

---

4. Furthermore, even if this issue had been properly preserved, it is without merit. Under the facts of this case, the charges could not have been merged because the acts constituting kidnapping, as previously described, were independent of and interspersed with several acts of assault. *See State v. Finlayson*, 2000 UT 10, ¶ 19, 994 P.2d 1243 (explaining that separate convictions for kidnapping and sexual assault can be sustained where the evidence "show[s] that the kidnaping detention was longer than the necessary detention involved in the commission of the sexual assault" or, in other words, "the facts establishing the kidnaping detention must not be merely incidental to the sexual assault, but separate and independent therefrom").

be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." (citation and internal quotation marks omitted)).

## II. Ineffective Assistance of Trial Counsel

¶13    Ellis next argues that he received ineffective assistance of counsel. Ellis claims that his trial counsel was ineffective for failing to object to the explanation of the reasonable doubt standard in the jury instructions and the definition of "cohabitant" in the jury instructions.

¶14    "To prove ineffective assistance of counsel, [a] defendant must show: (1) that counsel's performance was objectively deficient, and (2) [that] a reasonable probability exists that but for the deficient conduct [the] defendant would have obtained a more favorable outcome at trial." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "To satisfy the first part of the test, [a] defendant must overcome the strong presumption that [his] trial counsel rendered adequate assistance, by persuading the court that there was no conceivable tactical basis for counsel's actions." *Id.* (second alteration in original) (citations, emphasis, and internal quotation marks omitted). To demonstrate prejudice, a defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "[D]efendants claiming ineffective assistance of counsel [are required] to affirmatively prove both prongs of the *Strickland* test to prevail. As a result, it is not necessary for us to address both components of the inquiry if we determine that a defendant has made an insufficient showing on one." *Archuleta v. Galetka*, 2011 UT 73, ¶ 41, 267 P.3d 232 (citations and internal quotation marks omitted).

## A.    Reasonable Doubt Instructions

¶15    Ellis contends that the jury instructions that defined the reasonable doubt standard—Instructions 16, 17, and 18—framed the State's burden as "no different from the standards applicable to

a civil trial" and that his trial counsel was ineffective for failing to object to these misstatements of law. Ellis contends that his trial counsel should have requested that the court use the "safe harbor" reasonable doubt instruction adopted by the Utah Supreme Court in *State v. Reyes*, 2005 UT 33, 116 P.3d 305.

¶16    The instruction promulgated in *Reyes* reads,

> "The [State] has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the [State's] proof must be more powerful than that. It must be beyond a reasonable doubt.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty."

*Id.* ¶ 37 (alterations in original) (quoting *Victor v. Nebraska*, 511 U.S. 1, 27 (1994) (Ginsburg, J., concurring in part and concurring in the judgment)).

¶17    While the Utah Supreme Court endorsed the use of the above-quoted language in a reasonable doubt instruction, it explicitly did not require that trial courts use this language, stating in a subsequent case, "'[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.'" *See State v. Austin*, 2007 UT 55, ¶ 6,

165 P.3d 1191 (quoting *Victor*, 511 U.S. at 5); *see also Victor*, 511 U.S. at 5 (recognizing that "the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course"). Rather, our supreme court has required "only that the instructions, taken as a whole, correctly communicate the principle of reasonable doubt, namely, that a defendant cannot be convicted of a crime except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Austin,* 2007 UT 55, ¶ 6 (citation and internal quotation marks omitted).

¶18    Here, the jury instructions read as a whole properly and adequately convey the concept of reasonable doubt. Instruction 15 explains that it is the prosecution's burden to prove Ellis's guilt beyond a reasonable doubt, that Ellis is not required to prove his innocence, and that the jury must presume his innocence from the start. Instruction 16 then explains that the jurors cannot "give up [the] assumption the defendant is innocent [unless they are] convinced that the defendant's guilt has been proven beyond a reasonable doubt." Instructions 16, 17, and 18 explain in greater detail what makes a doubt "reasonable," and the elements instruction for each charged offense reiterates that before the jury can find Ellis guilty of the offense, it "must find from all of the evidence and beyond a reasonable doubt each and every one of the . . . elements of that offense." Accordingly, any objection to the instructions based on the "safe harbor" language from *Reyes* would have been futile. Trial counsel did not perform deficiently by failing to raise a futile objection.[5] *See State v. Kelley*, 2000 UT 41, ¶ 26, 1

---

5. Ellis also claims that the errors in the reasonable doubt jury instructions amount to structural errors upon which his trial counsel's prejudice should be presumed. *See State v. Cruz*, 2005 UT 45, ¶ 17, 122 P.3d 543 ("Erroneous reasonable doubt instructions . . . give rise to structural errors, which are different than garden-variety trial errors. Structural errors are flaws in the framework within which the trial proceeds, rather than simply an error in the trial process itself. . . . [A] structural error analysis presumes prejudice." (citations and internal quotation marks omitted)). This

(continued...)

P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel.").

B.      Cohabitant Instruction

¶19     Last, Ellis argues that his trial counsel was ineffective for failing to object to the definition of "cohabitant" contained in the jury instructions. Ellis contends that because the jury instructions in his "case incorporated the same type of cohabitant definitions" as the jury instructions in *State v. Watkins*, 2013 UT 28, 309 P.3d 209, the supreme court's "concern" expressed in *Watkins* also exists here.

¶20     In *Watkins*, the defendant was convicted of aggravated sexual abuse of a child under Utah Code section 76-5-404.1(4)(h). *Watkins*, 2013 UT 28, ¶ 1. The aggravated component was based on the defendant being an adult cohabitant of the victim's father by virtue of his "temporarily staying in the spare bedroom of [the victim's] father's house." *Id.* The State theorized that the defendant's "status as an adult cohabitant of [the victim's father]" placed him in "a position of special trust" in relation to the child victim. *Id.* ¶ 7 (citation and internal quotation marks omitted). The term "cohabitant" was not defined in the statute under which the defendant was charged, and as a result, the jury instructions employed the definition provided in the Cohabitant Abuse Act. *Id.* ¶ 32 n.2. The Utah Supreme Court, in vacating the defendant's conviction, noted that the definition of cohabitant found in the Cohabitant Abuse Act, "has been specifically rejected by case law in other contexts." *Id.* The court then stated, "[The defendant's trial] counsel's failure to dispute the jury instruction's definition of a cohabitant raises possible concerns about his effectiveness." *Id.* Ellis relies on the supreme court's observation of "possible concerns about [counsel's] effectiveness" in *Watkins* as proof that his counsel in this case was ineffective.

---

5. (...continued)
argument necessarily fails in light of our determination that the reasonable doubt jury instructions were not flawed.

¶21    *Watkins* is inapposite. Here, we are faced with an enhancement of a domestic violence charge based on Ellis's relationship as a cohabitant of Mother pursuant to Utah Code section 77-36-1, which specifically incorporates the definition of cohabitant from the Cohabitant Abuse Act. *See* Utah Code Ann. § 77-36-1(1) (LexisNexis 2012) ("'Cohabitant' has the same meaning as in Section 78B-7-102 [of the Cohabitant Abuse Act]."). Without more, we fail to see how these statements from *Watkins* extend beyond the parties in that case. Ellis has done little more than note the similarities between that case and his own. He has not demonstrated how the supreme court's observation in *Watkins* establishes his own counsel's deficient performance. Indeed, Ellis admits that the language he relies on from *Watkins* is dicta and that the *Watkins* court did not adopt a definition of cohabitant. Likewise, Ellis's recognition that cohabitation constitutes a "critical element" in two of the charges against him does not prove that he was actually prejudiced by the definition of cohabitant provided to the jury. Accordingly, because Ellis has not demonstrated either prong of the *Strickland* test here, we reject his argument that his trial counsel was ineffective for failing to object to the jury instruction defining "cohabitant."

CONCLUSION

¶22    The trial court did not err by denying Ellis's motion to dismiss the aggravated kidnapping charge, and Ellis has not demonstrated that his trial counsel provided ineffective assistance by failing to object to the reasonable doubt jury instructions and the jury instruction defining the term "cohabitant." We affirm.

―――――――