VOROS, Judge,
(concurring in part and writing for the majority in part):
T 30 I concur in the lead opinion except as to Part III. I agree with the State that the trial court erred by merging Kataria's aggravated-kidnapping conviction into his aggravated-assault conviction. And because Judge Pearce concurs with my resolution of this issue, the following opinion represents the judgment of the court on this point.
131 Merger of the sort at issue here traces back to the Utah Supreme Court's opinion in State v. Couch, 635 P.2d 89 (Utah 1981). There, the court upheld convictions for both kidnapping and rape because "the kidnaping was not merely incidental or subsidiary to" the "host crime" of rape. Id. at 92-98. The court held that commission of the crime of kidnapping "requires a period of detention longer than the minimum inherent in the commission of a rape or a robbery." Id. at 98.
1 32 Our supreme court applied this merger doctrine in State v. Finlayson, another case involving rape. 2000 UT 10, 994 P.2d 1248. The court there used a three-part test to determine whether kidnapping merges with another crime:
[Ilf a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnaping the resulting movement or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
Id. 128 (quoting State v. Buggs, 219 Kan. 203, 547 P.2d 720, 731 (1976)). The court explained: "To sustain convictions for both kidnaping and sexual assault, the prosecutor must show that the kidnaping detention was longer than the necessary detention involved in the commission of the sexual assault." Id. 19. In Finlayson, the court saw no "detention prior to or during the sexual assault that exceeded the detention inherent in the sex crimes." Id. 122. Rather, it concluded that the defendant's "carrying the victim into [a] bedroom, handcuffing her, and physically preventing her escape while the sex crimes - were in progress" lacked independent significance and was "merely incidental" to the sex crimes. Id. 123. However, Finlayson also detained the victim for ten minutes before driving her home, forced her to wear a Jacket over her head, and drove her home by a *1103 cireuitous route taking at least thirty minutes longer than necessary. Id. 1382. The court explained that "these actions were of an independent significance separate from the commission of the sex crimes" and thus "sufficient to support a conviction for simple kidnaping." Id. 133.[8]
~ 138 In State v. Lee, 2006 UT 5, 128 P.3d 1179, our supreme court again addressed the merger doctrine developed in Couch and Finlayson. Lee assessed the merger of the same two offenses at issue here: aggravated kidnapping and aggravated assault. Id. T1. Lee approached two women and invited them to "party" with him. Id. 8. When they declined, he grabbed one of the women by the arm and groped her. Id. 4. He also pulled one of the women across the highway to an alley, where, after the other tried to intervene, he attacked both women. Id. 115-6. Our supreme court affirmed Lee's convictions for both aggravated assault and aggravated kidnapping against Lee's merger challenge:
[DJragging [one victim] across a highway by her hair was not "slight, inconsequential and merely incidental to" the assault Lee had already commenced against her. Nor was Lee's movement of [the victim] to a «location across Highway 40 "inherent in the nature of" his assault on her. Indeed, most assaults do not involve the relocation of the victim from one site to another. Finally, [the victim's] aggravated kidnap-ing carried a "significance independent of" the aggravated assault, as it allowed Lee to earry [one victim] away from [the other}, thereby rendering further assault, or even rape, "substantially easier of commission." In addition, carrying [the victim] to the alley between two buildings at a very early hour of the morning made the assault far more difficult to detect than it would have been on Highway 40 and thereby "substantially lessen[ed] [Lee's] risk of detection."
Id. 1384 (final two alterations in original) (internal citations omitted) (quoting Finlayson, 2000 UT 10, ¶ 23, 994 P.2d 1243).
134 Here, Kataria pushed Victim toward the bathroom and ordered her to shower the blood off of her body; when she emerged, he ordered her back into the shower.[9] These forced showers constituted "a period of detention longer than the minimum inherent in the commission of" the aggravated assault. See Couch, 635 P.2d at 98. Unlike the detention inherent in a rape-but like the detention in Lee-these showers were not "'merely incidental to the other crime," " " "inherent in the nature of the other crime,'" or lacking in " 'significance independent of the other crime"" See Finlayson, 2000 UT 10, ¶23, 994 P.2d 1243 (quoting Buggs, 547 P24 at 731). A compulsory shower is not inherent in an aggravated assault.[10]
*1104 85 Accordingly, the trial court's merger order is reversed and we remand for further proceedings.

. However, independent of the merger analysis, the court concluded that the evidence was insufficient to prove that Finlayson detained the victim with the intent "to facilitate the commission, attempted commission, or flight after commission or attempted commission of a felony." State v. Finlayson, 2000 UT 10, ¶¶ 33, 35, 994 P.2d 1243 (emphasis omitted). Accordingly, it agreed with Finlayson that the evidence did not support his conviction for aggravated kidnapping. Id. 135. Here, Kataria does not argue that any element of his conviction for aggravated kidnapping lacks evidentiary support.

. Contrary to the dissenting opinion, given the ferocity of the attacks Victim had just endured, we see no relevance in the fact that she "entered the shower on her own and that Kataria did not barricade the door or otherwise detain her in the shower." See supra % 22.

. The dissent places some reliance on the third Buggs factor, that the detention " '[mlust have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.'" State v. Finlayson, 2000 UT 10, ¶23, 994 P.2d 1243 (quoting State v. Buggs, 219 Kan. 203, 547 P.2d 720, 731 (1976)). This factor seems to cloud rather than clarify the analysis. The first clause of that factor-that a kidnapping must have some significance independent of the other crime-complements the first two Buggs factors, that the detention not be "merely incidental to the other crime" and not be "inherent in the nature of the other crime." Id. (citation and internal quotation marks omitted). But the final clause of the third factor appears to describe a crime that lacks independent significance: "in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." Id. (citation and internal quotation marks omitted). A crime whose significance lies in making the host crime easier to commit or get away with would seem to be dependent on, not independent of, the host crime. Because we cannot square this *1104 clause with Couch, Finlayson, the first two Buggs factors, or even the first half of the third Buggs factor, we do not accord it controlling weight.