Associate Chief Justice Lee,
concurring in part and concurring in the judgment:
¶124 I concur in the judgment of the court and also in the majority opinion in large part. I write separately only to articulate a different basis for rejecting the argument that Mr. Met’s conviction on child kidnapping does not merge with his aggravated murder conviction. See supra ¶¶99-109.
¶125 The majority rejects this claim under the “common-law merger” standard set forth in State v. Lee, 2006 UT 5, ¶ 31, 128 P.3d 1179, and State v. Finlayson, 2000 UT 10, ¶ 23, 994 P.2d 1243. Yet the court acknowledges that our opinions in these cases may not be reconcilable, and adverts to the possible “need,” in an “appropriate case,” to “examine the concerns that motivated us to adopt the doctrine of common-law merger” and to “evaluate whether Finlayson continues to be the correct test” to “address” those concerns. Supra ¶104 n.25.
¶126 In my view this is the “appropriate ease.” The court’s analysis, in my view, highlights. fundamental problems with our doctrine of common-law merger. Our application of the Lee-Finlayson test underscores its unworkability. And it highlights a threshold deficiency in the whole enterprise of “common-law merger,” which is that we have no common-law power in a field governed by statute.
¶127 The parties have accepted the viability of the Lee-Finlayson test and have confined their arguments to the proper outcome of the case under that test. But the basis and validity of the test is fair game in a case in which we are asked to apply it. We cannot apply the test without describing its content, and we cannot describe its content without identifying its basis in law. If we have reason to question the basis for a common-law test we are asked to apply, we can — and should— do so.[27]
¶128 I would do so here. I would consider (1) whether we have the power to articulate a common-law merger test in the face of a governing statute, and (2) if so, whether the Lee-Finlayson test is an appropriate means of exercising that power. I will outline my tentative views on these questions here. I will first articulate the grounds for questioning our authority to exercise common-law power in this field, and then identify some concerns with the unworkability of the Lee-Finlayson formulation of the operative test.
I
¶129 We have held “that, in some factual scenarios, crimes may be so related that they must merge” even where merger is not required by the constitution or by statute. See Lee, 2006 UT 5, ¶ 31, 128 P.3d 1179. “Where two crimes are defined narrowly enough that proof of one does not constitute proof of the other, but broadly enough that both may arise from the same facts,” we have said that “merger may be appropriate.” Id. The most common application of this premise has been in cases involving sexual assault and kidnapping. We have said that “virtually every rape ... involves a necessary detention.” Finlayson, 2000 UT 10, ¶ 19, 994 P.2d 1243. “[Absent a clear distinction” between sexual as *477 sault and kidnapping, we have warned that “virtually every rape ... would automatically be a Mdnap[p]ing as well.” Id. And we have suggested that a conviction for both crimes may raise double jeopardy concerns — by imposing “double punishment for essentially the same act.” Id.; see also Lee, 2006 UT 6, ¶ 31, 128 P.3d 1179 (suggesting that “a criminal defendant could be punished twice for conduct that amounts to only one offense, a result contrary to protections against double jeopardy”).
¶130 With these concerns in mind, we have articulated a test aimed at identifying kidnapping charges that are “incidental to” a sexual assault, or in other words that lack “an independent significance.” Finlayson, 2000 UT 10, ¶ 23, 994 P.2d 1243. The test states that a “confinement ... alleged to have been done to facilitate the commission of another crime” can constitute kidnapping only if the confinement (a) is not “slight, inconsequential and merely incidental to the other crime,” (b) is not “of the kind inherent in the nature of the other crime,” and (c) has “some significance independent of the other ciime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.” Id.
¶131 We have referred to the above as “common-law merger.” Supra ¶100. But that seems a misnomer. Our criminal law is completely codified. Utah Code § 76-1-106 (“Common law crimes are abolished and no conduct is a crime unless made so by this code, other applicable statute or ordinance.”). And the legislature has enacted a statute dictating the terms and conditions of merger of criminal offenses. See Utah Code § 76-1-402. I cannot see how we can exercise common-law power in the face of two crimes defined by statute, and any argument for the existence of such power is eliminated by the existence of a statute regulating the enterprise of merger in this field. Schroeder Invs., L.C. v. Edwards, 2013 UT 25, ¶¶ 22-23, 301 P.3d 994 (noting that where a statute speaks to the issue before the court “our judicial role is secondary (interpretation), not primary (policymaking)”).
¶132 That leaves the constitutional — double jeopardy — question. But the concern identified in our cases is illusory. The double jeopardy provisions of both the United States and Utah Constitutions protect only against double jeopardy for the “same offense.” U.S. CONST. amend. V (“nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb”); UTAH CONST. art. 1, § 12 (“nor shall any person be twice put in jeopardy for the same offense”). And both provisions have long been understood to operate at the offense level — as a protection against multiple punishments or serial prosecution of the same criminal offense. See Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); State v. Sosa, 598 P.2d 342 (Utah 1979).
¶133 The operative test allows prosecution for distinctly separate offenses, and defines separateness based on whether each of two crimes contains distinct elements. Where each crime has distinct elements, there is no double jeopardy problem even where both crimes arise out of the exact same set of facts. See Blockburger, 284 U.S. at 304, 52 S.Ct. 180 (stating that “where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one[ ] is whether each provision requires proof of a fact which the other does not”); Sosa, 598 P.2d at 346 (holding that the “test emphasizes the elements of the two crimes,” and that “[i]f each requires proof that the other does not,” the Double Jeopardy Clause is “satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes” (citations omitted)).
¶134 The facts of Blockburger and Sosa are instructive. In Blockburger the defendant was charged and convicted on two separate charges arising out of a single sale of illegal drugs — one for the sale of “forbidden drugs except in or from the original stamped package” and another for the same sale of the same “drugs not in pursuance of a written order of the person to whom the drug is sold.” 284 U.S. at 303-04, 52 S.Ct. 180. Thus, in Blockburger “there was but one sale, and the question [was] whether, both sections [of the federal criminal code] being violated by the same act, the accused committed two offenses or only one.” Id. at 304, 52 S.Ct. 180. *478 The court concluded that these were separate offenses because each crime required proof of a different element. And it accordingly held that there was no violation of double jeopardy in the defendant’s conviction and punishment on both offenses. See id. (holding that “although both sections were violated by the one sale, two offenses were committed” because each crime required proof of an element not required on the other),
¶135 Sosa is along similar lines. In that case, the defendant was convicted on charges of carrying a loaded firearm in a vehicle under Utah Code section 76-10-505 (1953) and possession of a dangerous weapon by a convicted person under Utah Code section 76-10-503(1). 598 P.2d at 343. As in Blockburger, the Sosa court emphasized that the double jeopardy test “emphasizes the elements of the two crimes.” Id. at 346. And “[bjecause the elements of [the defendant’s] separate prosecutions differ[ed], and either offense could have been established without establishing the other,” the court held that “the double jeopai’dy doctrine [did] not apply.” Id.
¶136 The double jeopardy premise of the Lee-Finlayson test cannot stand in light of the above. Blockburger and Sosa squarely repudiate the notion that double jeopardy is offended when a criminal defendant is “punished twice” for the same conduct. Lee, 2006 UT 5, ¶ 31, 128 P.3d 1179. And they preserve for the legislature the power to identify multiple crimes arising out of a single set of facts. So the question whether to impose multiple punishments for a single deplorable act is a legislative prerogative; the Double Jeopardy Clause has no say in the matter.
¶137 In Utah, moreover, we have a statute that regulates the matter of merger. Our legislature has provided that merger is appropriate “when the same act of a defendant under a single criminal episode” establishes “offenses which may be punished in different ways under. different provisions of [the] code.” Utah Code § 76-1-402(1) (emphasis added). Where that is the case, “the act shall be punishable under only one such provision,” and “an acquittal or conviction and sentence under any such provision bars a prosecution under any other such provision.” Id. ■
¶138 The merger statute also calls for merger as to “included” offenses. Id. § 76-1-402(3). An “included” offense is one that is “established by proof of the same or less than all the facts required to establish the commission of the offense charged,” id. § 76-1-402(3)(a); one that “constitutes ah attempt, solicitation, conspiracy, or form of preparation to commit the offense charged or an offense otherwise included therein,” id. § 76-1-402(3)(b); or one “specifically designated by a statute as a lesser included offense,” id. § 76-1-402(3)(c). By statute, “[a] defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense.” Id. § 76-1-402(3). This reflects a requirement of double jeopardy, as an included offense is also one that would be barred under Blockburger/Sosa. 284 U.S. at 304, 52 S.Ct. 180; 598 P.2d at 346.
¶139 I cannot see how this court could retain common-law power in light of this statute. The legislature has said that a criminal charge is barred only if it is an “included” offense or if it arises out of the very “same act of a defendant” that is punished in a different way under the code. See id. § 76-1-402(1), (3). And that statute seems to me to leave no room for this court to prescribe merger for crimes that are almost but not quite covered by the statute — for crimes that arise out of “virtually” the same conduct, or that impose “double punishment for essentially the same act.” Finlayson, 2000 UT 10, ¶ 19s 994 P.2d 1243 (emphasis added).
II
¶140 The factors set forth in Finlayson and Lee are also problematic on their own terms. None of them provide meaningful guidance or means of predictably distinguishing properly merged offenses from those that should not merge; collectively, they render our inquiry into common-law merger unworkable. And that is another consideration weighing in favor of reconsidering these decisions. See Eldridge v. Johndrow, 2015 UT 21, ¶ 40, 345 P.3d 553 (“[T]o determine whether a precedent has become firmly established,” *479 the court first asks “how well it has worked in practice.”); see also supra ¶ 104 n.25 (acknowledging the difficulty of reconciling Fin-layson and Lee).
¶141 The first-listed element asks whether the defendant’s confinement of the victim is “slight, inconsequential and merely incidental to” another crime. Finlayson, 2000 UT 10, ¶ 23, 994 P.2d 1243. That inquiry is hardly an objective one. Slightness is in the eye of the beholder. As to consequentiality, I would think that any detention that allows a defendant to commit a crime would be a matter of consequence. So how this element may play out in individual cases is anyone’s guess.
¶142 The second element — whether the degree of confinement is “inherent in the nature of the other crime,” id. — is also problematic. Confinement is never inherent in the nature of murder (the crime at issue here). Murder can certainly be committed without confining someone, as by poisoning them or shooting them with a gun. That holds even for sexual assault, as rape can be committed against an unconscious person or someone who is not physically detained but nonetheless does not consent. See Utah Code § 76-5-406(5) (stating that a rape “is without consent of the victim” if “the actor knows the victim is unconscious, unaware that the act is occurring, or physically unable to resist”). So this element makes no sense. And it again compounds the unpredictability of the inquiry-
, ¶143 The last element is whether the confinement has “some significance independent of the other crime” in making it “substantially easier of commission” or in “substantially lessening] the risk of detection.” Finlayson, 2000 UT 10, ¶ 23, 994 P.2d 1243. This inquiry is puzzling. It will always be substantially easier to commit a murder (or sexual assault) if the perpetrator has confined the victim to the extent required for kidnapping. So the last element again provides no basis for distinguishing properly merged offenses from those that should not merge.
¶144 Thus, the elements prescribed in Fin-layson and Lee yield no workable test. And the problems inherent in implementing this test lend further weight to the argument for overruling these decisions.
Ill
¶145 Our common-law merger precedents are premised on vague concerns about constitutional protections against double jeopardy. But those concerns seem unfounded for reasons explained above. And unless a conviction actually violates a defendant’s rights under the constitution, we have no business overriding it as a common-law matter. That is doubly true where the legislature has enacted a statute that occupies the field of merger.
¶146 I see no basis for the common-law merger principle set forth in Finlayson and Lee. And I would overrule the standard set forth in those decisions rather than apply what I see as an unworkable test that we have no power to impose.
11147 The only operative merger standard that I see in our law is that set forth by statute, Utah Code section 76-1-402. I would reject Mr. Met’s merger argument on the ground that the conviction on his kidnapping offense is not based on the “same act” as that which sustained his murder conviction, as required under section 76-1-402(1), and is not an “included” offense under section 76-1-402(3).

. See Winward v. State, 2012 UT 85, ¶ 43, 293 P.3d 259 (Lee, J., concurring in the judgment) (explaining the basis for reaching the question whether a common-law "egregious injustice” exception had been preempted by the Post-Conviction Remedies Act even when the parties accepted the exception in their briefing; noting that ”[w]fe cannot defensibly find such an exception unsatisfied without describing its content, and we cannot describe its content without articulating its basis in law").