2017 UT App 161

## THE UTAH COURT OF APPEALS

SALT LAKE CITY,
Appellee,
*v.*
RAFAEL REYES-GUTIERREZ,
Appellant.

Opinion
No. 20150755-CA
Filed August 24, 2017

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 141911985

Melissa G. Stirba, Attorney for Appellant

Simarjit S. Gill and Curtis M. Tuttle, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN concurred.[1]

POHLMAN, Judge:

¶1 After his first trial ended in a mistrial granted on his own motion, Defendant Rafael Reyes-Gutierrez was retried and convicted of one count of retail theft, a class A misdemeanor. Reyes-Gutierrez appeals his conviction on double jeopardy grounds, asserting that the prosecutor goaded him into seeking a mistrial in the initial proceeding, and retrial was therefore constitutionally barred. We affirm.

---

1. Judge Stephen L. Roth participated in this case as a member of the Utah Court of Appeals. He retired from the court before this decision issued.

BACKGROUND

*The First Trial*

¶2     Reyes-Gutierrez left a retail store without paying for a pair of shoes he had placed in his shopping bag. The City charged Reyes-Gutierrez with retail theft under Utah Code section 76-6-602 and enhanced the charge from a class B to a class A misdemeanor based on his prior theft convictions. *See* Utah Code Ann. § 76-6-412(1)(c)(iii) (LexisNexis Supp. 2016) (providing that theft of property valued less than $500 is punishable as a class A misdemeanor if the defendant was twice convicted of other theft offenses within ten years of the present offense).

¶3     Several days before Reyes-Gutierrez's first trial, defense counsel notified the prosecutor that she was unable to view the copy of the store's surveillance video that the City had produced in discovery. The prosecutor tried to view his copy of the same video but discovered it also did not work. When the prosecutor asked the store's loss prevention supervisor if he could get another copy, he was told the store no longer had the video. The prosecutor told defense counsel that because he could not get the video to work, he would not be using it at trial.

¶4     The City's first witness at trial was an asset protection associate who testified that he observed Reyes-Gutierrez try to leave the store without paying for the shoes. On cross-examination, the associate explained that he observed the theft through the store's video surveillance system. When asked if he brought a video recording of the incident to court, he stated that he did not but that he previously gave one to the police. On further examination by both parties, the associate provided additional testimony about his familiarity with the store's video files and its ability to preserve video recordings.

¶5     The City next called the Salt Lake City police officer who investigated the theft. He testified on direct examination that he did not recall whether he had reviewed video surveillance

footage of the theft. On cross-examination, the officer testified that he had received a copy of the video from the store asset protection associate but that he did not bring a copy of the video to court.

¶6      After the officer's testimony, the jury was excused for lunch. During a conference with the court, the City's attorneys expressed concern that defense counsel's cross-examination of the witnesses suggested that there was a video recording of the theft that the City had either lost or withheld and that the City had acted improperly. The prosecutor stated: "I think it would be appropriate to notify the jury that there is a video, the prosecution provided it to the defense, [and] neither side has been able to make it work." The prosecutor also questioned whether it would be appropriate to call defense counsel to testify about whether the City gave the defense a copy of the video and whether she could get it to play.

¶7      The trial court agreed that the impression had been left that there was a video "hanging out somewhere" and told the attorneys that they would "have to figure out a way to put it before the jury as evidence" because the court could not instruct the jury about evidence unless the parties stipulated to an instruction. The City's attorneys indicated their preference for a stipulated instruction, stating that "otherwise [the City will] have to call [defense counsel] to testify." The trial court told the parties to discuss how they wanted to proceed, stating that "it wouldn't be the first time that a lawyer has called another lawyer who is on the case as a witness."

¶8      During the ensuing recess, the City learned that Reyes-Gutierrez did not intend to testify. Defense counsel also told the City that Reyes-Gutierrez would stipulate to a jury instruction regarding the video. However, just before court resumed, defense counsel changed course and told the prosecutor that she would not stipulate to the City's proposed instruction.

¶9      After the break, and before any further discussion about the video, the prosecutor raised a concern with the court

regarding defense counsel's opening statement. Defense counsel had told the jury that the evidence would show that Reyes-Gutierrez "wasn't trying to take the shoes without paying for them," and this case was about a "simple human error." The prosecutor argued that no evidence had been provided to that effect and that, in light of Reyes-Gutierrez's intention not to testify, "either a mistrial would be appropriate or else . . . the City should be able to present evidence [of prior convictions] contrary to the assertion." Defense counsel objected to both alternatives, and the prosecutor submitted the issue without further argument. The court denied the City's request.

¶10    Defense counsel then asked the trial court to address the possibility of her being called to testify about the video. The prosecutor weighed in, explaining that the parties "had a stipulation before the lunch break," but as the proceeding resumed "it was unstipulated and so [they were] left having to figure out how to deal with it from there." Defense counsel then argued that the issue of the video was irrelevant, and if the City attempted to call her, she would "have to move for a mistrial at that point."

¶11    Before the City responded, the trial court commented that, "if the defendant stipulates to a mistrial," the court would grant it. The court expressed the view that because the jury had been left with the impression that the City had chosen not to use or had lost the video, "it may be necessary for the City to put on evidence about the videotape, that the videotape was turned over to the defense, [and] that it didn't work." In response, the prosecutor suggested that the City might be able to call someone else from defense counsel's office to testify that the defense had received the video, and the court and the prosecutor discussed other possible alternatives to calling defense counsel as a witness. Defense counsel reiterated that she would move for a mistrial if called to testify.

¶12    After a brief recess, the prosecutor informed the court that no agreement had been reached and that he would be calling defense counsel to testify. Defense counsel objected and again

stated that if the City tried to call her, she would ask for a mistrial. The court then informed the parties that it was "wholly appropriate" for either the prosecutor or defense counsel, or both of them, to testify about the video and their knowledge about its functionality. Defense counsel proposed that the police officer be recalled, but the court and the prosecutor agreed that he could not testify about what had been given to the defense.

¶13 Following some additional discussion, the court stated that it might allow defense counsel to be called as a witness unless there was someone else from her office who could testify about the video. The court then asked, "Are you moving for a mistrial?" Defense counsel repeated that she would move for a mistrial if the City called her as a witness. Co-counsel for the City then interjected, stating that rather than retry the case, the City could call the prosecutor as a witness. Defense counsel again objected.

¶14 At that point, the court asked for any last comments from the attorneys. Co-counsel for the City expressed her view that the City had attempted to do everything it could "to make this case go forward at this time," including calling the prosecutor to testify about the video instead of defense counsel, but that the City would stipulate to a mistrial if a motion were made. Defense counsel responded, "I think if you are going to allow attorneys to be called as witnesses in this case then I am forced to move for a mistrial."

¶15 The court stated that it would allow the prosecutor to testify and noted that defense counsel "has moved for a mistrial." When asked if the City stipulated to the mistrial, co-counsel for the City stated, "[W]e're willing to go forward to do whatever we need to go forward with trial today but it appears that we are at a stalemate and we will stipulate." The court then confirmed Reyes-Gutierrez's agreement and declared a mistrial. The prosecutor indicated the City's intent to file a rule 404(b) notice and a motion in limine to avoid on retrial the issues that arose relating to the video and the mistake defense.

*The Motion to Bar Retrial*

¶16    Reyes-Gutierrez filed a motion to bar retrial on double jeopardy grounds, arguing that the City goaded him into seeking a mistrial so that it could retry him under more favorable conditions. During a hearing on the motion, before the same judge who presided over the trial, the prosecutor asked to be placed under oath. He testified that after the court denied the City's motion to either admit evidence relevant to the mistake defense or declare a mistrial, he "did not want a mistrial on the case, [he] wanted to finish the trial that day."

¶17    The prosecutor also testified about how important presenting evidence regarding the video was to the City. He described how he had met with the police officer during a break in the first trial to try to get the video to work and explained that he did not call the officer or the asset protection associate to testify about its functionality because neither one had the requisite knowledge. The prosecutor also explained that defense counsel would not tell him who else from her office had "tried to get the video to work" and that he thought she was the best witness "because she knew that she had been provided the video and she knew about [their] conversation."

¶18    With regard to the City's stipulation to the motion for a mistrial, the prosecutor explained that it became clear to him based on defense counsel's strong objections that an appeal would be likely if either he or defense counsel were allowed to testify. He agreed to the mistrial to avoid a likely appeal and because the trial had "broken down." Finally, the prosecutor testified that there was never "some sort of nefarious conspiracy or strategy" to trick Reyes-Gutierrez into a mistrial and that his decisions were not based on a suggestion from the City's co-counsel that it would be better to restart and try the case another day.

¶19    Based on the prosecutor's testimony and the trial judge's recollection of the first trial, the court denied Reyes-Gutierrez's motion and found the City's intended purpose "in asking that

[the prosecutor] be allowed to testify was to get certain facts before the jury and not to obtain a mistrial and not to goad the defense into making a motion for a mistrial." Additionally, the court found, "[T]his was a situation where the attorneys and frankly the Court . . . were doing their best to address fast moving issues . . . and the lawyers were doing their best . . . to make the best decisions that they could." The court noted that the City's stipulation to a mistrial "may have been a tactical decision to avoid appeal issues or other reasons" but that "the request to call [the prosecutor] as a witness and so forth [was] not made . . . to goad the defendant into asking for a mistrial."

*The Second Trial*

¶20    Reyes-Gutierrez was retried and found guilty by the jury and sentenced by the court. He appeals.

ISSUE AND STANDARD OF REVIEW

¶21    The sole issue on appeal is whether the trial court erroneously concluded that the prosecutor did not intend to provoke Reyes-Gutierrez into requesting a mistrial. Whether a prosecutor intended to goad a defendant into moving for a mistrial is a question of fact, *see Oregon v. Kennedy*, 456 U.S. 667, 675 (1982), and we will uphold a trial court's factual determination regarding prosecutorial intent unless we conclude it is clearly erroneous, *see State v. Levin*, 2006 UT 50, ¶ 20, 144 P.3d 1096; *see also United States v. Valadez-Camarena*, 163 F.3d 1160, 1163 (10th Cir. 1998) ("[I]n the specific context of double jeopardy goading cases, we will uphold the trial court's determination unless we conclude it is clearly erroneous.").

¶22    A factual finding is clearly erroneous only if it is "against the clear weight of the evidence" or if, after looking at the record as a whole, we reach "a definite and firm conviction that a mistake has been made." *State v. Hinmon*, 2016 UT App 215, ¶ 9, 385 P.3d 751 (citation and internal quotation marks omitted). "Our role is not to reweigh the evidence, but to determine only if

the appellant has demonstrated a lack of evidentiary support for the trial court's findings." *Utah Dep't of Transp. v. TBT Prop. Mgmt., Inc.*, 2015 UT App 211, ¶ 23, 357 P.3d 1032. The mere fact that this court might have reached a different result on the evidence presented does not justify setting aside the trial court's findings. *State v. Walker*, 743 P.2d 191, 193 (Utah 1987).

ANALYSIS

I. Double Jeopardy

¶23 The prohibitions against double jeopardy contained in the Fifth Amendment to the United States Constitution, the Utah Constitution, and the Utah Code protect a criminal defendant from repeated prosecutions for the same offense. *See* U.S. Const. amend. V; Utah Const. art. I, § 12; Utah Code Ann. § 77-1-6(2)(a) (LexisNexis 2012); *State v. Rudolph*, 970 P.2d 1221, 1230 (Utah 1998).[2] "[P]art of this protection against multiple

---

2. Reyes-Gutierrez refers in his brief to the double jeopardy protections afforded by both federal and state law, asserting that the respective provisions "contain . . . the same content." (Citation and internal quotation marks omitted.) *But see State v. Harris*, 2004 UT 103, ¶ 23, 104 P.3d 1250 ("[T]he double jeopardy guarantees afforded defendants under the Utah Constitution are different from and provide greater protection than those afforded by the United States Constitution . . . ."). Because Reyes-Gutierrez does not argue for greater protection under the Utah Constitution than is afforded by the Fifth Amendment to the United States Constitution, and principally relies on case law interpreting double jeopardy protections under the Fifth Amendment, we will not engage in a separate state constitutional analysis. *See id.* ("[A]s a general rule, we will not engage in [a] state constitutional analysis unless an argument for different analyses under the state and federal constitution is

(continued…)

prosecutions . . . affords a criminal defendant a valued right to have his trial completed by a particular tribunal." *Oregon v. Kennedy*, 456 U.S. 667, 671–72 (1982) (citation and internal quotation marks omitted). This protection against double jeopardy, however, ordinarily does not bar retrial where a mistrial is granted at the defendant's request. *See id.* at 672–73; *State v. Manatau*, 2014 UT 7, ¶ 10, 322 P.3d 739. This is because "[a] defendant's motion for a mistrial constitutes 'a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact.'" *Kennedy*, 456 U.S. at 676 (quoting *United States v. Scott*, 437 U.S. 82, 93 (1978)).

¶24   But there is a narrow exception to this general rule. A defendant who successfully moves for a mistrial "may invoke the bar of double jeopardy" to a second trial where the governmental conduct giving rise to the mistrial "was intended to provoke the defendant into moving for a mistrial." *Id.* at 679; *see also State v. Lafferty*, 2001 UT 19, ¶ 149, 20 P.3d 342 ("[Double jeopardy] can bar retrial where a judge or prosecutor acts in bad faith with the intent to provoke a mistrial in order to provide the prosecution with a more favorable opportunity to convict."); *State v. Pearson*, 818 P.2d 581, 584 (Utah Ct. App. 1991) (stating that double jeopardy bars retrial "where bad faith conduct by the trial court or prosecutor was intended to provoke a mistrial"). Even prosecutorial misconduct that is harassing or overreaching, although sufficient to warrant a mistrial, will not bar a second trial absent such intent. *Kennedy*, 456 U.S. at 675–76; *State v. Trafny*, 799 P.2d 704, 709 (Utah 1990). This standard requires a trial court to examine the subjective intent of the prosecutor and make a finding of fact. *Kennedy*, 456 U.S. at 675. While the United States Supreme Court has acknowledged that this standard is "not entirely free from practical difficulties," the standard is "manageable . . . to apply," allowing trial courts to

---

(…continued)
briefed." (second alteration in original) (citation and internal quotation marks omitted)).

"[i]nfer[] the existence or nonexistence of intent from objective facts and circumstances." *Id.*

## II. Prosecutorial Intent

¶25    Reyes-Gutierrez contends that the trial court clearly erred in finding that the prosecution did not intentionally provoke him into moving for a mistrial. "[T]he burden of overturning factual findings is a heavy one." *Brown v. State*, 2013 UT 42, ¶ 69 n.63, 308 P.3d 486 (citation and internal quotation marks omitted). To succeed on appeal, Reyes-Gutierrez cannot "simply restate or review evidence that points to an alternate finding or a finding contrary to the trial court's finding of fact." *See Ostermiller v. Ostermiller*, 2010 UT 43, ¶ 20, 233 P.3d 489 (citation and internal quotation marks omitted). Rather, to show clear error, he must identify the supporting evidence and explain why the trial court's factual finding is nonetheless against the clear weight of the evidence. *See Brown*, 2013 UT 42, ¶ 37; *State v. Shipp*, 2005 UT 35, ¶ 20, 116 P.3d 317.

¶26    Here, after hearing argument on Reyes-Gutierrez's motion to bar retrial and the sworn testimony of the prosecutor, the trial court found that the City did not goad the defense into seeking a mistrial. The court determined that the City asked to have the prosecutor testify to put certain facts before the jury relating to the store surveillance video and not to goad the defense into moving for a mistrial. Reyes-Gutierrez contends that these findings are clearly erroneous. He argues that "the objective facts and circumstances surrounding the first trial show the City's intent to provoke [his] mistrial motion," and that the trial court's findings—made without the benefit of the trial transcript—were against the clear weight of the evidence. We disagree.

¶27    Contrary to Reyes-Gutierrez's contention, the record supports the trial court's findings that rather than trying to goad the defense into moving for a mistrial, the prosecutor was attempting to educate the jury about the functionality of the video. The trial court's findings were supported by the sworn

testimony of the prosecutor as well as the prosecutor's efforts to avoid a mistrial and the manner in which the circumstances unfolded during the initial proceeding.

¶28    At the hearing on Reyes-Gutierrez's motion to bar retrial, the prosecutor offered to testify, under oath and subject to cross-examination, to enable the trial court to assess his credibility. While under oath, the prosecutor repeatedly affirmed that he had no intention of goading the defense into seeking a mistrial. He explained that after his own mistrial motion was denied, he "did not want a mistrial on the case" and "wanted to finish the trial that day." He testified that it was important to him that the jury understood that the City had provided the store surveillance video to the defense and was not hiding anything. He believed the best way to accomplish that goal was to call defense counsel to testify about the video and her conversations with the prosecutor, but he was also willing to testify.

¶29    The trial court implicitly found the prosecutor to be credible, accepting his testimony that he did not intend to goad Reyes-Gutierrez into requesting a mistrial. Reyes-Gutierrez concedes that the trial court may consider the testimony of the prosecutor in determining prosecutorial intent, and acknowledges that this court must give due regard to the trial court's opportunity to judge the prosecutor's credibility, but argues that the prosecutor's denial of intent to provoke a mistrial is not dispositive. While we agree that a trial court is not required to blindly accept a prosecutor's testimony as true, the trial court properly considered the prosecutor's sworn testimony in light of the attendant circumstances in determining prosecutorial intent, and we owe considerable deference to that determination. *See Oregon v. Kennedy*, 456 U.S. 667, 680 (1982) (Powell, J., concurring) (recognizing the relevance of a prosecutor's testimony on the question of intent); *Taft v. Taft*, 2016 UT App 135, ¶ 44, 379 P.3d 890 (recognizing the considerable deference owed to the "trial court's discretion to weigh the evidence and accept what it finds to be most credible and reject or give less weight to the rest").

¶30 In addition, the trial court did not base its findings solely on the prosecutor's testimony. Rather, the court also relied on its firsthand observation of the events as they unfolded during the first trial, and its findings are consistent with those events.

¶31 After the jury had been excused for lunch, the prosecutor expressed the need to develop evidence to show that the City provided a copy of the video to Reyes-Gutierrez but that neither side could get the video to play. He first asked for a jury instruction on the issue, but when the trial court stated that an instruction would require defense counsel's stipulation, the prosecutor suggested calling defense counsel to testify while the City's co-counsel suggested that there might be other witnesses who could testify. The trial court instructed counsel to discuss the issue, stating that "it wouldn't be the first time that a lawyer has called another lawyer who is on the case as a witness."

¶32 During the lunch recess that followed, defense counsel indicated that she would stipulate to a jury instruction but withdrew that stipulation shortly before court resumed. Once back on the record, defense counsel raised the issue of whether she could be called to testify regarding the video, stating that if she were called she would move for a mistrial. Before the City responded, the court stated that it would declare a mistrial if Reyes-Gutierrez consented to it. Rather than insisting on calling defense counsel (and thereby immediately securing a mistrial), the prosecutor continued to explore other options. He speculated that perhaps another person in defense counsel's office could testify about receipt of the video, and the court took a brief recess so that the parties could decide how to proceed.

¶33 When the parties returned, the City repeated its intention to call defense counsel to testify, and defense counsel again stated that she would move for a mistrial if so called. Rather than simply accept the mistrial, the City resisted and suggested that it call the prosecutor to testify instead. Defense counsel again objected and stated that she would move for a mistrial if the court allowed either attorney to testify. The trial court stated that it would allow the prosecutor to testify and asked the City if

it stipulated to a mistrial. The City stated that it preferred to proceed, but because of the impasse would so stipulate.

¶34 The prosecutor later explained that he could not call someone else from defense counsel's office to testify because defense counsel would not reveal who else (if anyone) had attempted to play the video. Similarly, although he considered other alternatives, he was the only one from his office who could testify about the City's efforts to play the video and the fact that the City had provided a copy of the video to the defense.

¶35 These objective facts support the trial court's determination that rather than seeking to goad the defense into moving for a mistrial, the prosecutor was "doing [his] best to address fast moving issues" and looking for alternatives to resolve the issue short of a mistrial. If the prosecutor's sole objective was to secure a mistrial as Reyes-Gutierrez contends, the prosecutor presumably would not have sought defense counsel's stipulation to a jury instruction and would have agreed to a mistrial the first time defense counsel suggested it.

¶36 Reyes-Gutierrez invites us to disregard this evidence, contending that the City's failed motion for a mistrial earlier in the trial "is an objective and persuasive indicator that the City wanted the first trial to end in a mistrial." He states that "[w]ithout another avenue through which it could have remedied its deficient preparation for trial, including to rebut the defense of mistake, the City engaged in a strategy that it was well-aware would provoke a mistrial motion from Reyes-Gutierrez."

¶37 While we agree that the fact that the City moved for its own mistrial could support a finding of prosecutorial intent to provoke a mistrial, it does not compel us to conclude that the trial court clearly erred in reaching a different conclusion. "Trial courts are accorded wide latitude in determining factual matters," *Valcarce v. Fitzgerald*, 961 P.2d 305, 314 (Utah 1998) (plurality opinion), and Reyes-Gutierrez is effectively asking us to reweigh conflicting evidence and draw a different conclusion.

But Reyes-Gutierrez "may not simply reargue [his] position based on selective excerpts of evidence presented to the trial court." *ProMax Dev. Corp. v. Mattson*, 943 P.2d 247, 255 (Utah Ct. App. 1997).

¶38 Moreover, we do not agree with Reyes-Gutierrez's assertion that after the City's motion for a mistrial was denied, the prosecutor then devised a strategy to goad him into moving for a mistrial. To the contrary, the City suggested calling defense counsel as a witness *before* it was told that Reyes-Gutierrez was not going to testify. Thus, the City's expressed intent to call defense counsel as a witness to testify about the video was not a plan hatched in response to the denial of the City's mistrial motion. And even after the trial court denied the City's mistrial motion, the prosecutor did not immediately raise the issue. Rather it was defense counsel who asked the court to address whether it would allow the City to call her to testify, preemptively announcing that if called she would move for a mistrial. Given this sequence of events, we see no clear error in the trial court's determination that the prosecutor was working "to address fast moving issues" rather than attempting to provoke a mistrial.

¶39 Finally, Reyes-Gutierrez argues that the trial court's factual findings are not entitled to deference because they are inconsistent with the actual facts as reflected in the trial transcript. In particular, Reyes-Gutierrez argues that it is irreconcilable to find that the prosecutor did not intend to provoke a mistrial "when the City had actively stipulated to defense counsel's motion for a mistrial before such motion was even made." He insists that the City's stipulation to a mistrial before a motion was made "indicates the City foresaw [its] decision would provoke [him] into moving for a mistrial."

¶40 While it is true that the City stipulated to a mistrial before Reyes-Gutierrez officially moved for one, by the time the City noted its stipulation, the writing was on the wall. The parties and the court had discussed the issue at some length, and defense counsel unequivocally and repeatedly stated that if she

were called as a witness to testify about the video, she would move for a mistrial. The City then proposed that the prosecutor be called to testify to avoid retrying the case, and defense counsel stated that she "would object to that as well" as "wholly inappropriate." It was only then that the City indicated that it would stipulate to a mistrial if a motion were made, and, even after making that offer, the City continued to express willingness to compromise by having the prosecutor testify in place of defense counsel. The fact that the City anticipated a motion that defense counsel had repeatedly promised does not undermine our confidence in the trial court's findings.

## CONCLUSION

¶41 We conclude that the record supports the trial court's finding that the prosecutor did not intentionally provoke the defense into seeking a mistrial. Accordingly, we uphold the trial court's order denying Reyes-Gutierrez's motion to bar retrial and affirm his conviction.

———————